**In the Matter of James Dewey POFF and Norma Phillips Poff, Bankrupts.**

**No. 2711.**

United States District Court
W. D. Virginia,
Roanoke Division.

Nov. 28, 1962.

Raymond P. Barnes, Roanoke, Va., for bankrupts.

John H. Kennett, Jr., Roanoke, Va., for creditors Harry F. English and The Bank of Salem.

MICHIE, District Judge.

This matter comes up on a petition filed by Harry F. English and The Bank of Salem to review a ruling of the Referee in Bankruptcy In the Matter of James Dewey Poff, Bankrupt, dated September 18 1961, which granted a discharge to the Bankrupt James Dewey Poff pursuant to an opinion of the Referee dated September 9 1961.

The petition seems to be phrased as a request for reconsideration by the Referee but the Referee has treated it as a Petition for Review of his action and I shall do likewise.

The petition is based on several grounds which may be summarized as follows:

(1) That the Bankrupt failed to keep or preserve books of accounts or records from which his financial condition and business transactions might be ascertained;

(2) That the Bankrupt obtained money on credit, or an extension thereof, by making a false statement in writing to the Colonial-American National Bank representing that certain liens had been legally released when in fact the releases were fraudulent and unauthorized;

(3) That the Bankrupt conspired to put in effect certain forgeries by inducing one Kyle Chewning to permit his wife's name to be forged on certain notes to secure money at the Colonial-American National Bank and actually forged Mrs. Chewning's name to one note and aided in forging her name to another; and

(4) That the Bankrupt "knowing" misrepresented the value of certain properties whereon he borrowed large sums of money.

I will take up these objections in the foregoing order.

1. *Failure to Keep Records.*

This may logically be sub-divided into two parts, (a) failure to keep personal accounts and (b) failure to keep the accounts and records of the Queen's Drive-In Theatre or Queen's Drive-In Amusement Park.

Poff had been for many years a real estate salesman working for real estate agencies and being paid by them commissions on the sales he made for them. In 1955 he and one Waller A. Bohon formed a partnership and bought about seventeen acres of land west of Salem. On this land they constructed a drive-in theatre. The theatre seems to have been successful at first and the partners undertook to enlarge the operation by adding a merry-go-round and various other attractions. To do this they had to borrow additional sums of money and apparently the additions did not bring in enough additional revenue

to meet the added expenses with the result that thereafter the operation went downhill and was finally wound up. However before it was wound up the Bankrupt Poff sold out his interest to his partner Bohon.

Section 14 of the Bankruptcy Act (11 U.S.C.A. § 32) provides that one ground for refusing to grant a discharge to a bankrupt is that the bankrupt has "destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case".

As to the type of records required it may be well to quote a few sentences from Remington on Bankruptcy, Vol. 7 at pages 205–207:

> "It can be said generally that absence of records, or inadequacy of records, is more readily justified in connection with a small business than a large one, and in connection with one that is simple, involving mostly cash transactions than one that is complex and involves credit transactions. However, the complexity of the business, rather than its size, is the principal factor.
>
> \* \* \* \* \* \*
>
> "Total absence of books may be justified in connection with very small businesses, but the justifiability of absence of records is for determination by the court on the facts and circumstances of each individual case. \* \* \*
>
> \* \* \* \* \* \*
>
> "Persons whose income has been derived from wages, salaries, or commissions earned by their services to others are not expected to keep much of any, if any, records or accounts, and can usually justify their paucity of records on occupational grounds. A mere employee is not required to keep books, neither is the ordinary traveling or other salesman."

It would appear that there was no occasion for Mr. Poff to keep any books at all. His income could be readily ascertained from the records of the real estate firm for which he worked. And his Bank's records would show his disbursements. These records and also copies of Mr. Poff's income tax returns were available.

■ We pass then to the records of the Queen's Amusement Park. This of course was quite a different operation and records of this operation should have been kept. It has not been proved that they were not kept. Poff did not and could not produce them. He had sold his interest to Bohon and unquestionably had turned over to Bohon at that time such records as existed. The property then was taken away from Bohon on foreclosure and the records appear to have gone with the property. At one of the hearings in the matter Bohon testified that possibly the records were still on the property, title to which had passed from him on foreclosure. Nevertheless he undertook to go over to the property and search for the records and did find some, which he brought back to the court. These were apparently far from complete. But if there was any duty to preserve these records after the foreclosure the duty was upon Bohon rather than Poff who had sold out to Bohon. They were no longer Poff's records.

Yet, strange to say, these creditors object to the discharge of Poff but made no objection to the discharge of Bohon who was likewise in bankruptcy and who was obviously the man who last had charge of the records of the amusement park.

2. *False Statement to Obtain Credit.*

■ The charge is that Mr. Poff obtained money on credit, or an extension thereof, by making a false statement in writing to the Colonial-American National Bank by representing to the Bank that the deeds of trust securing various sums of money lent to the Bankrupt by certain persons had been released when the fact

was that the purported releases were false and fraudulent.

About all that is said about this in the protesting creditors' brief is as follows:

"It is also submitted that outside of the brief and report filed in this case, that no examination of the bankrupt was ever made as to whether he did present a statement to the Colinial American National Bank reportedly made by J. G. Sheets & Sons showing that the property was appraised at $160,000.-00, although the attorney for the creditors recalls, if his memory is correct, that the Bank of Salem procured this from the records of the Colonial American National Bank, which latter bank was very careful to have their own appraisers view the property."

Apparently with respect to this vague charge, the Referee's opinion is as follows:

"The financial statements in the record show an operating statement, a balance sheet and statement of partners' capital accounts as of December 31, 1956, prepared by Charles W. Wilcox and apparently held by the Bank of Salem. This statement reflected an operating profit of approximately $12,532.00, which was added to the capital investment of each partner. There is no evidence that this statement was ever given to the Colonial American National Bank, although it apparently reflected the first year of the operations of said partnership, and did disclose the fact that accurate records were kept until all assets were apparently exhausted. There is in evidence a financial statement apparently prepared by James D. Poff for the Colonial American National Bank, which reflects total assets of $102,900.00 and liabilities of $38,-400.00. The objecting creditors raise a point that this was a false financial statement given to the bank. Since practically all of the assets reflected on this financial statement were the real estate known as Queen's Drive-In and the residence of the said Poff, both of which properties had apparently been viewed by the bank, and I assume appraised by their representatives. It would appear that any attempt at concealing or misrepresentation of the value of these properties could hardly have been concealed as a simple view or appraisal of the property would reflect an approximate value of same. There appear to be several other appraisals in this case, one in the amount of $70,000.-00 made by J. G. Sheets & Sons."

From the record before me I certainly cannot overrule the Referee's conclusions that the valuation placed on the property in this appraisal was not fraudulent and did not constitute a materially false statement in writing respecting the bankrupt's financial condition.

3. *The Alleged Chewning Forgeries.*

■ This charge is to the effect that Poff conspired to put in effect certain forgeries by inducing Kyle Chewning to permit his wife's name to be forged on certain notes to secure money at the Colonial-American National Bank and that he actually forged the name of Mrs. Chewning to one note and aided and abetted in forging her name to another with the intent of deceiving and persuading the Bank to advance monies for use at the Queen's Drive-In.

I can find nothing in the protesting creditors' "Brief Supporting Grounds to Oppose Discharge" which relates to this ground of opposition.

However it appears from the Petition for Review that there is a complete absence of evidence on this point. In the Petition the following paragraph occurs:

"As to specification number 3, that James D. Poff effected forgeries by inducing Kyle Chewning to sign his wife's name to a note at the Colonial American National Bank, while Poff denied it on the witness stand the attorney for the creditors did not

have an opportunity to call Mr. Kyle Chewning, who was present, to take the stand in this respect primarily because the hour was getting late. Furthermore, if the referee has any doubts on this question the attorney for the creditors will be most happy to put Mr. Chewning on the stand, and he will testify, this writer has every reason to believe, that he did not forge his wife's name, but that Mr. Poff forged his wife's name on one note, and that Mr. Bohon forged it on another. And this writer repeats that if the referee is interested he will be most happy to present this evidence."

In the Referee's opinion the following is said with respect to that matter:

"I am unable to determine from the evidence as to allegations and specifications No. 3 that James D. Poff effected forgeries by inducing Kyle Chewning to forge his wife's name on a note at the Colonial American National Bank. Poff stated he had nothing to do with the same. There does not seem to be sufficient evidence to substantiate the allegations, which are specifically denied by the bankrupt."

It seems obvious that there is no proof to support this alleged ground for the denial of the discharge.

4. *Misrepresentation of the Value of Certain Properties.*

■ This ground of objection is as follows: That Poff knowingly misrepresented the value of certain properties whereon he borrowed certain large sums of money from Harry English, Ruby Woods and F. E. McCollum, knowing such properties to be already heavily encumbered and/or of such value that they could not possibly be worth anywhere near the amounts secured thereon.

The charge does not allege in what respect the Bankrupt "misrepresented the value of certain properties" nor what the properties were. I find no reference to this ground in the petitioning creditors' "Brief Supporting Grounds to Oppose Discharge". And apparently it is not mentioned in the Petition for Review.

The Referee says with respect to it:

"Specification No. 4 has been covered heretofore*, and whether or not said loans therein referred to would be repaid would seem to depend on the success of the operation of said Queen's Amusement enterprise. There is no question the company started losing money after the first year's operation, and, as was testified to by Poff, money was borrowed from Peter to pay Paul until the operations ran so far into the red that the collapse was inevitable.

"There is no question if getting into debt justifies a denial of a discharge, then Poff's discharge should be denied. On the other hand, there is no question but that Poff and his partner entered into the business in all good faith with the expectation of making a substantial profit, otherwise it is difficult to assume the said Poff would have invested the amount of money which he did in said enterprise."

This matter is obviously in too vague a state to justify setting aside the Referee's decision on the basis of the record before me.

The Petition for Review will therefore be denied and the finding of the Referee sustained.

* N. B. by court. I cannot find where it has been covered heretofore.